IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


MORRIS L. MACK,
    Petitioner,

vs.                                             Case No. 5:08cv132/SPM/EMT

IKE EICHENLAUB, Warden,[1]
    Respondent.
_____/

**ORDER, REPORT AND RECOMMENDATION**

      This matter is before the court on a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241 (Doc. 1). Respondent filed an answer (Doc. 10), and Petitioner filed a reply (Doc. 12).

      The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After careful consideration of the issues raised by Petitioner, it is the opinion of the undersigned that Petitioner is not entitled to relief.

I.     BACKGROUND

      On November 7, 2000, Petitioner was sentenced in the United States District Court for the District of South Carolina to a term of 324 months of incarceration, to be followed by a term of three (3) years of supervised release, for conspiracy to possess with intent to distribute quantities of powder cocaine and cocaine base, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A) (Doc. 1 at 2; Doc. 10, Declaration of Bradley J. Breslin ¶ 3, Attach. 1). Petitioner's sentence was subsequently reduced to 121 months in incarceration, to be followed by a term of three (3) years of supervised release (Doc. 10, Breslin Decl. ¶ 3, Attach. 1). At sentencing, Petitioner received a two-

---

[1] Ike Eichenlaub succeeded Scott Middlebrooks as Warden of FCI-Marianna and is automatically substituted as Respondent. *See* Fed. R. Civ. P. 25(d)(1).

point sentence enhancement for possession of a dangerous weapon, specifically, two (2) shotguns and two (2) semi-automatic 9mm rifles (Doc. 10, Breslin Decl. ¶ 4, Attach 2).[2]

While housed at the Federal Prison Camp in Marianna, Florida, Petitioner was interviewed by Bureau of Prisons (BOP) staff to determine his eligibility for participation in the Residential Drug Abuse Treatment Program (RDAP) (Doc. 10, Breslin Decl. ¶ 12). Although Petitioner was determined eligible to participate in RDAP and completed the program (*see* Doc. 10, Breslin Decl. ¶ 8, Attach. 5), he was deemed ineligible for early release under 18 U.S.C. § 3621(e), pursuant to the BOP's Director's discretion, based upon the specific offense characteristics in Petitioner's PSR, specifically, the two-point sentence enhancement for possession of the shotguns and rifles (Doc. 10, Breslin Decl. ¶¶ 12, 13, Attachs. 7, 8). Petitioner filed informal and formal grievances at the institutional level, and he appealed the denial of those grievances to the Regional Director of the BOP and the Central Office (*see* Doc. 10, Breslin Decl. ¶ 7). As of the date of Respondent's response, Petitioner had not received a response to his Central Office appeal (*see id.*); however, during the pendency of this habeas action, Petitioner's appeal to the Central Office was denied (*see* Doc. 17, Supplemental Declaration of Bradley J. Breslin ¶ 3). Therefore, Petitioner has now exhausted his administrative remedies concerning the issue raised in the instant petition.

II.     ANALYSIS

In the instant petition, Petitioner challenges the BOP's decision to deny his early release on the following two grounds: (1) the administrative regulation upon which the BOP's decision was based, specifically, Rule 550.58 of the Code of Federal Regulations, is invalid under the Administrative Procedure Act (APA); and (2) the BOP's applying the regulation to him but not inmates housed in the Ninth Circuit Court of Appeals, in light of the Ninth Circuit's determination that Rule 550.58 violated the APA, *see* Arrington v. Daniels, 516 F.3d 1106 (9th Cir. 2008), violates the Equal Protection Clause (Doc. 1 at 3, 6; Doc. 12 at 5). Respondent contends Petitioner's claims are without merit.

---

[2]Attachment 2 is Petitioner's Presentence Investigation Report (PSR) which was submitted by Respondent in camera pursuant to a BOP Program Statement which prohibits inmates from obtaining or possessing copies of PSR's. *See* Federal Bureau of Prisons Program Statement 1351.05, Release of Information.

Case No.: 5:08cv132/SPM/EMT

As part of the 1994 Violent Crime Control and Law Enforcement Act, the BOP was charged with making available "appropriate substance abuse treatment" for inmates with "treatable condition(s) of substance addiction or abuse." 18 U.S.C. § 3621(b). If an inmate completes a drug and alcohol treatment program authorized under 18 U.S.C. § 3621(e),

> The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

§ 3621(e)(2)(B). Thus, section 3621(e)(2)(B) provides an incentive for inmates to enroll in and complete the treatment program.

To implement § 3621(e)(2)(B), the BOP promulgated its first rule and corresponding regulation, in 1995, governing substance abuse treatment programs and inmate eligibility for early release consideration under section 3621. 60 Fed. Reg. 27692 (May 25, 1995); 28 C.F.R. § 550.58 (1995). Because 18 U.S.C. § 3621(e) did not define "nonviolent offense," the BOP relied upon the definition of "crime of violence" as found in 18 U.S.C. § 924(c)(3), to determine whether or not a particular inmate would be eligible for early release as a "non-violent offender." *See* 60 Fed. Reg. 27692 (May 25, 1995). Months later, the BOP issued a Program Statement to implement the early release eligibility provision of 18 U.S.C. § 3621(e) and 28 C.F.R. § 550.58. *See* Federal Bureau of Prisons Program Statement 5162.02, Definition of Term "Crimes of Violence," § 7.a. (July 24, 1995). Program Statement 5162.02 not only excluded inmates within the definition of "crime of violence" as established by the 1995 interim rule from eligibility for early release, but additionally excluded inmates with convictions for felon in possession of ammunition under 18 U.S.C. § 922(g), as well as drug trafficking convictions under 21 U.S.C. § 841 or 846, if the offender received a sentence enhancement for weapons possession under United States Sentencing Guidelines Manual § 2D1.1(b)(1). Program Statement 5162.02, §§ 7, 9.

The Courts of Appeals were divided on whether the BOP had the discretion to exclude drug offenders and felons in possession of firearms and ammunition. Five Courts of Appeals, including the Eleventh Circuit, held impermissible the BOP's interpretation of § 3621(e) as precluding from eligibility for early release prisoners who received sentence enhancements for nonviolent offenses.

*See* Byrd v. Hasty, 142 F.3d 1395, 1397–98 (11th Cir. 1998); Fristoe v. Thompson, 144 F.3d 627, 631 (10th Cir. 1998) (same); Martin v. Gerlinski, 133 F.3d 1076, 1079–80 (8th Cir. 1998) (same); Roussos v. Menifee, 122 F.3d 159, 162–64 (3d Cir. 1997) (same); Davis v. Crabtree, 109 F.3d 566, 569 (9th Cir. 1997) (same). Three Courts of Appeals reached the opposite conclusion. *See* Pelissero v. Thompson, 170 F.3d 442, 447 (4th Cir. 1999) (holding BOP's definition of crime of violence was permissible); Parsons v. Pitzer, 149 F.3d 734, 737–39 (7th Cir. 1998) (same); Venegas v. Henman, 126 F.3d 760, 763 (5th Cir. 1997) (same).

In response to this lack of consistency, the BOP revised 28 C.F.R. § 550.58 in 1997 by issuing an interim rule that asserted the BOP's discretionary authority to determine eligibility for early release under § 3621(e) and removed its reference to § 924(c)(3) from the regulation. 62 Fed. Reg. 53690 (Oct. 15, 1997). At the same time the BOP issued the 1997 interim rule, it issued Program Statement 5162.04 to assist in implementing BOP policies and programs, including the early release eligibility provision of 18 U.S.C. § 3621(e). Program Statement 5162.04, Categorization of Offenses (Oct. 9, 1997). That Program Statement has two main sections, Section 6, which lists offenses the BOP categorizes as crimes of violence, and Section 7, which lists offenses that, in the Director's discretion, preclude an inmate's receiving certain BOP program benefits. *See* Program Statement 5162.04, §§ 1, 6, 7. Petitioner's offense, a violation of 18 U.S.C. § 922(g), is included in Section 7 of the Program Statement. Program Statement 5162.04, § 7.e.

Litigation once again ensued. This time challenges focused on whether the categorical exclusion rule was a permissible exercise of the BOP's discretion. Two Courts of Appeals, including the Eleventh Circuit, concluded that the 1997 interim rule was not a permissible exercise of the BOP's discretion to narrow the class of prisoners eligible for early release under § 3621(e). *See* Kilpatrick v. Houston, 197 F.3d 1134, 1135 (11th Cir. 1999); Ward v. Booker, 202 F.3d 1249, 1256–57 (10th Cir. 2000). Two circuit courts reached the contrary result. *See* Bellis v. Davis, 186 F.3d 1092, 1095 (8th Cir. 1999); Bowen v. Hood, 202 F.3d 1211, 1220 (9th Cir. 2000). The Supreme Court granted certiorari to resolve the circuit split. In Lopez v. Davis, the Court upheld the validity of the 1997 interim rule, reasoning that the BOP permissibly exercised the discretion afforded the agency by the statute to narrow the class of prisoners eligible for early release, and

holding that the BOP's interpretation of Section 3621(e)(2)(B) was reasonable both in considering preconviction conduct and in making categorical exclusions. 531 U.S. 230, 239–42, 121 S. Ct. 714, 148 L. Ed. 2d 635 (2001).

On December 22, 2000, the BOP promulgated a final rule, which adopted the 1997 interim rule without change. *See* 65 Fed. Reg. 80745, 80747–48 (Dec. 22, 2000). The final rule, 28 C.F.R. § 550.58, reads in relevant part:

> An inmate who was sentenced to a term of imprisonment . . . for a nonviolent offense, and who is determined to have a substance abuse problem, and successfully completes a residential drug abuse treatment program during his or her current commitment may be eligible, in accordance with paragraph (a) of this section, for early release by a period not to exceed 12 months.
>
> (a)   Additional early release criteria.
>
>   (1)   As an exercise of the discretion vested in the Director of the Federal Bureau of Prisons, the following categories of inmates are not eligible for early release:
>   . . . .
>   (vi)   Inmates whose current offense is a felony:
>   . . . .
>     (B) That involved the carrying, possession, or use of a firearm or other dangerous weapon . . . .

28 C.F.R. § 550.58(a)(1)(vi)(B). As previously discussed, Program Statement 5162.04 provides that "[a]n inmate will be denied the benefits of certain programs if his or her offense is either a crime of violence or an offense identified at the discretion of the Director of the Bureau of Prisons." Program Statement 5162.04, § 1 (Oct. 9, 1997). Section 7 of this program statement lists offenses that preclude program benefits at the Director's discretion even though the offenses may not be categorized as crimes of violence. Included in this list is "[a]ll offenses under 18 U.S.C. § 922(g)." *Id.*, § 7.e.

In Petitioner's first claim, he contends the BOP's decision to deny him early release benefits under 18 U.S.C. § 3621(e) was arbitrary and capricious because it was based upon 28 C.F.R. § 550.58, a rule that the Ninth Circuit deemed invalid under Section 706(2)(A) of the APA because the BOP "failed to set forth a rationale for its decision to categorically exclude prisoners convicted

of [firearm possession] offenses," *see* Arrington, 516 F.3d at 1114 (*see* Doc. 1 at 3, 7–14, Ex. 2). Section 706(2)(A) provides that "a reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In Arrington, the Ninth Circuit held that the BOP's promulgation of 28 C.F.R. § 550.58(a)(1)(vi)(B) is invalid because the BOP failed to articulate in the administrative record sufficient justification for the regulation when it finalized it on December 22, 2000, thereby rendering it arbitrary and capricious in violation of 5 U.S.C. § 706(2)(A) of the APA.[3]  Arrington, 516 F.3d at 1112–16.  The Ninth Circuit reached its decision in Arrington as follows.  It first recognized that under the APA's "arbitrary and capricious" standard set forth at 5 U.S.C. § 706(2)(A), a federal court's scope of review is narrow and deferential.  Arrington, 516 F.3d at 1112 (citation omitted).  It acknowledged that an agency action is valid "if a reasonable basis exists for [the agency's] decision." *Id.* (internal quotation and citation omitted).  The Ninth Circuit next stated that a federal court "may look only to the administrative record to determine whether the agency has articulated a rational basis for its decision." *Id*. (citing Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 50, 103 S. Ct. 2856, 77 L. Ed. 2d 443 (1983)) ("It is well established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself.")) (other citations omitted).  It noted that "[p]ost hoc explanation of agency action by appellate counsel cannot substitute for the agency's own articulation on the basis for its decision." *Id*. (citing Fed. Power Comm'n v. Texaco, Inc., 417 U.S. 380, 397, 94 S. Ct. 2315, 41 L. Ed. 2d 141 (1974)).

Next, the Ninth Circuit concluded that the administrative record showed that the BOP articulated one basis for categorically excluding inmates convicted of felonies involving the possession, carrying, or use of firearms from receiving 18 U.S.C. § 3621(e)(2)(B)'s early release benefit:  the need for uniformity in the application of the implementing regulation. *Id.* at 1113–14

---

[3]The undersigned is aware that 18 U.S.C. § 3625 provides that:  "The provisions of sections 554 and 555 and 701 through 706 of title 5, United States Code, do not apply to the making of any determination, decision, or order under this subchapter."  However, § 3625 does not apply to Petitioner's claim because Petitioner does not challenge the making of any determination, decision, or order; rather, he challenges the BOP's rulemaking.  *See* Jasperson v. Federal Bureau of Prisons, 460 F. Supp. 2d 76, 84 (D. D.C. 2006).  The Bureau does not contend otherwise.

(citing 65 Fed. Reg. 80747 (Dec. 22, 2000)). The Ninth Circuit then held that this rationale did not justify the BOP's action. *Id.* at 1114. It explained:

> A general desire for uniformity provides no explanation for why the Bureau exercised its discretion to achieve consistency through the promulgation of a categorical *exclusion* rule. The Bureau's stated desire for uniformity could have been accomplished in any number of ways. For example, the Bureau could have achieved uniformity by categorically *including* prisoners with nonviolent convictions involving firearms, thus making them eligible for early release: a result that would have been entirely consistent with the statute's aim of offering incentives for prisoner participation in residential substance abuse programs. Instead, it chose to achieve uniformity by categorically *excluding* such prisoners from eligibility. Although either choice in all likelihood would have withstood judicial scrutiny, the Bureau offered no explanation for why it exercised its discretion to select one rather than the other. The agency's lack of explanation for its choice renders its decision arbitrary and capricious. *See, e.g.*, Burlington Truck Lines, Inc. [v. United States], 371 U.S. [156, 167], 83 S. Ct. 239[, 9 L. Ed. 2d 207 (1962)] (striking down action for failure to explain why agency chose one of two available remedies where "[t]here are no findings and no analysis here to justify the choice made, no indication of the basis on which the [agency] exercised its expert discretion").

*Id.* (emphasis in original).

The Ninth Circuit refused to consider the rationale that the BOP chose the categorical exclusion because of the increased risk that offenders with convictions involving firearms might pose to the public. *Id.* at 1113. That public safety rationale, the Ninth Circuit concluded, was not stated in the administrative record, but only was articulated in the BOP's brief to the Supreme Court in Lopez. *Id.* (citing Lopez, 531 U.S. at 23 (quoting Brief for Respondents at 30)). The Ninth Circuit held that the public safety rationale "is precisely the type of 'post hoc rationalization [ ]' of appellate counsel that we are forbidden to consider in conducting review under the APA." *Id.* (quoting Burlington Truck Lines, Inc., 371 U.S. at 168). Therefore, the Ninth Circuit concluded, although the public safety rationale could be considered in evaluating the validity of an agency's adjudication, under Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842, 104 S. Ct. 2778, 2781, 81 L. Ed. 2d 694 (1984), *see* Lopez, 531 U.S. at 236–45, it could not be taken into account when evaluating the validity of the agency's rulemaking decisions. *Id.* at 1113–16.

To date, no court outside the Ninth Circuit has followed Arrington, and most courts have rejected Arrington as contrary to Lopez v. Davis. *See* Gatewood v. Outlaw, 560 F.3d 843 (8th Cir.

2009); Muolo v. Quintana, 593 F. Supp. 2d 776 (W.D. Pa. 2009); Minotti v. Whitehead, 584 F. Supp. 2d 750 (D. Md. 2008); *see also* Spraw, et al. v. Longley, Nos. CIV 08-4070, CIV 08-4096, CIV 08-4099, CIV 08-4107, CIV 08-4108, CIV 08-4118, CIV 08-4149, CIV 08-4153, CIV 09-4002, 2009 WL 1209852 (D. S.D. Apr. 30, 2009) (unpublished); Carver v. Chapman, No. 4:08-CV-571-Y, 2009 WL 1651512 (N.D. Tex. June 11, 2009) (unpublished); Norcutt v. Zych, No. 08-CV-14888, 2009 WL 514083 (E.D. Mich. Mar. 2, 2009) (unpublished); Griffin v. Federal Bureau of Prisons, No. 3:08-2080-SB, 2009 WL 482352 (D.S.C. Feb. 23, 2009) (unpublished); Gardner v. Grandolsky, No. 08-6127 (RMB), 2009 WL 467848 (D.N.J. Feb. 23, 2009) (unpublished); Johnson v. Phillips, No. 1:08CV179, 2009 WL 304744 (N.D. W.Va. Feb. 6, 2009) (unpublished); Cross v. Berkebile, No. 3-08-CV-1379-M, 2009 WL 159280 (N.D. Tex. Jan. 21, 2009) (unpublished); Snipe v. Dep't of Justice, No. 3:08-cv-22, 2008 WL 5412868 (N.D. W.Va. Dec. 23, 2008) (unpublished); Sinclair v. Eichenlaub, No. 2:07-CV-12967, 2008 WL 5235981 (E.D. Mich. Dec. 15, 2008) (unpublished).

The undersigned declines to follow the Ninth Circuit ruling in Arrington because none of the requirements for an arbitrary and capricious finding is apparent here, and because the BOP's rationale for promulgating 28 C.F.R. § 550.58 withstands the APA's highly deferential standard of review. This case involves agency rulemaking under 5 U.S.C. § 553, which provides only that the agency shall publish notice of the proposed rulemaking, afford interested persons an opportunity to participate, and "incorporate in the rules adopted a concise general statement of their basis and purpose." 5 U.S.C. § 553(c). The Supreme Court has repeatedly emphasized "that generally speaking this section of the Act established the maximum procedural requirements which Congress was willing to have the courts impose upon agencies in conducting rulemaking procedures." Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc., 435 U.S. 519, 524, 98 S. Ct. 1197, 55 L. Ed. 2d 460 (1978). Under Section 553, an agency determination need not be made "on the record" unless the statute being applied so requires. United States v. Allegheny-Ludlum Steel Corp., 406 U.S. 742, 756–57, 92 S. Ct. 1941, 32 L. Ed. 2d 453 (1972). Thus, the Ninth Circuit panel in Arrington erred when it disregarded the BOP's public safety rationale simply because the court could not find that rationale in an "administrative record" which, as the Eighth Circuit noted in Gatewood

v. Outlaw, 560 F.3d 843, 847 (8th Cir. 2009), the Arrington court never defined but seemed to limit to the BOP's Federal Register notice in 2000 finalizing the previously interim rule.

Though rulemaking decisions, which are prospective and legislative in nature, need not be made on a confined administrative record, they still must be reviewed under § 706(2)(A) and "upheld, if at all, on the basis articulated by the agency itself." Motor Vehicle Mfrs. Ass'n of the U.S., Inc., 463 U.S. at 50. The Supreme Court articulated the scope of review as follows:

> The scope of review under the "arbitrary and capricious" standard is narrow and a court is not to substitute its judgment for that of the agency. Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a "rational connection between the facts found and the choice made." In reviewing that explanation, [courts] must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

Id. at 43 (citations omitted). The reviewing court should not attempt itself to make up for such deficiencies: "We may not supply a reasoned basis for the agency's action that the agency itself has not given." Id. (citing SEC v. Chenery Corp., 332 U.S. 194, 196, 67 S. Ct. 1575, 1577, 91 L. Ed. 1995 (1947)). The court may however, "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." Id. (citing Bowman Transp. Inc. v. Arkansas-Best Freight System, 419 U.S. 281, 286, 95 S. Ct. 438, 442, 42 L. Ed. 2d 447 (1974)). In Motor Vehicle Mfrs. Ass'n of U.S., Inc., the Court refused to enforce an agency order rescinding a prior rule, explaining that "an agency changing its course by rescinding a rule is obligated to supply a reasoned analysis for the change beyond that which may be required when an agency does not act in the first instance." 463 U.S. at 42.

In the instant case, the BOP has consistently sought to implement the same substantive policy in the face of continued judicial resistance. In these circumstances, it is appropriate to discern the reasons for the agency's final rule from the various prior interim rules, Program Statements, and litigation positions reflecting that consistent policy. The Supreme Court discerned that public safety was the basis for the BOP's exclusion of firearm offenders and concluded that the BOP's rule was

substantively reasonable in Lopez, 531 U.S. at 244. Therefore, 28 C.F.R. § 550.58 is valid under Sections 553(c) and 706(2)(A) of the APA. *See* Gatewood, 560 F.3d at 847–48; *accord* Harrison v. Lamanna, 19 Fed. Appx. 342 (6th Cir. 2001) (unpublished).

Additionally, the BOP's uniformity rationale justified the amended interim and final rules. In its comments in the Federal Register, the BOP explained that it was amending 28 C.F.R. § 550.58 (1995) in order to address the legal issues raised by the courts of appeals in the litigation that followed the enactment of that regulation and Program Statement 5162.02, so that it could uniformly apply its policies throughout the country. 65 Fed. Reg. 80747–48 (Dec. 22, 2000). That rationale is not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A); *see* Gatewood, 560 F.3d at 848–49 (BOP's uniformity rationale is legitimate and justified amended interim and final rules); *see also* Cross, 2009 WL 159280, at **4–7 (rejecting petitioner's APA challenge to BOP's decision not to reduce sentence upon successful complete of drug treatment program due to petitioner's conviction for felon in possession of ammunition under 18 U.S.C. § 922(g)(1)).

Finally, Petitioner's challenge to the BOP's denial of a sentence reduction on equal protection grounds is without merit. To state a claim for an equal protection violation based on the unequal administration or enforcement of neutral statutes and policies, Petitioner must show the following: (1) he is similarly situated to others who received different treatment, and (2) the different treatment was motivated by a discriminatory purpose. Strickland v. Alderman, 74 F.3d 260, 264 (11th Cir. 1996); E&T Realty v. Strickland, 830 F.2d 1107, 1112–13 (11th Cir. 1987). Thus, in order to assert a viable equal protection claim, Petitioner must first make a threshold showing that he was similarly situated in the relevant aspects to those who received more favorable or different treatment. *See, e.g.*, Campbell v. Rainbow City, Ala., 424 F.3d 1306, 1314–17 (11th Cir. 2006) (rejecting an equal protection claim where developer had not established that other projects were similarly situated in terms of, *inter alia*, proposed use, number of variances sought, procedural status and documentation presented to zoning board). Petitioner must also allege Respondent acted with the intent to discriminate against him. *See* McClesky v. Kemp, 481 U.S. 279, 292, 107 S. Ct. 1756, 1767, 95 L. Ed. 2d 262 (1987); E & T Realty, 830 F.2d at 1113. There must be intentional discrimination:

"[m]ere error or mistake in judgment" or "[e]ven arbitrary administration of a statute, without purposeful discrimination, does not violate the equal protection clause." E & T Realty, 830 F.2d at 1114. "'Discriminatory purpose' implies more than intent as volition or intent as awareness of consequences. It implies that the decision maker . . . selected . . . a particular course of action at least in part 'because of' its adverse effects upon an identifiable group." *Id.* (quoting Personnel Adm'r v. Feeney, 442 U.S. 256, 279, 99 S. Ct. 2282, 2296, 60 L. Ed. 2d 870 (1979) (omission in original)). Conclusory allegations or assertions of personal belief of disparate treatment or discriminatory intent are insufficient. GJR Investments, Inc. v. County of Escambia, Fla., 132 F.3d 1359, 1367–68 (11th Cir. 1998) (finding that allegations that defendants' actions were "arbitrary and capricious in that [they] acted with an improper motive, without reason, or upon a reason that was merely pretextual" were insufficient to state a claim); Coon v. Ga. Pac. Corp., 829 F.2d 1563, 1569 (11th Cir. 1987).

In this case, Petitioner has failed to show that he is similarly situated with those inmates who have received the benefit of the Arrington decision. Quite simply, while Arrington may be persuasive authority in other jurisdictions, at this time, it is only applicable to inmates within the Ninth Circuit. Petitioner is not incarcerated within the Ninth Circuit. Thus, he is not situated the same as those inmates who have thus far received a benefit from that decision. For that same reason, Petitioner cannot show that his alleged unequal treatment is a result of intentional or purposeful discrimination; instead, any "unequal treatment" is simply a matter of location. Therefore, his equal protection claim is without merit.

Accordingly, it is **ORDERED**:

The clerk of court is directed to change the docket to reflect that Ike Eichenlaub is substituted for Scott Middlebrooks as Respondent.

And it is respectfully **RECOMMENDED**:

That the petition for writ of habeas corpus (Doc. 1) be **DENIED** with prejudice.

At Pensacola, Florida, this 26th day of June 2009.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

Objections to these findings and recommendations may be filed within ten (10) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>. A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).